UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHUOC VAN NGO,<br><br>                                  Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>                                Respondents. | Case No.: 25-CV-3234 JLS (MMP)<br><br>**ORDER (1) GRANTING IN PART WRIT OF HABEAS CORPUS,**<br><br>**(2) DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER, AND**<br><br>**(3) GRANTING MOTION FOR ORDER TO SHORTEN TIME**<br><br>(ECF Nos. 1, 2, 8) |

Presently before the Court is Petitioner Phuoc Van Ngo's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1), Motion for Temporary Restraining Order ("TRO," ECF No. 2), and Motion for Order to Shorten Time to File a Traverse (ECF No. 8). Also before the Court is Respondents Kristi Noem's (Secretary of the U.S. Department of Homeland Security), Pamela Bondi's (Attorney General of the United States), Todd Lyons's (Acting Director of Immigration Customs Enforcement), Jesus Rocha's (Acting Field Director, San Diego Field Office), and Christopher LaRose's (Senior Warden of Otay Mesa Detention Center) (collectively, "Respondents") Return in Opposition to the Habeas Petition ("Ret.," ECF No. 6), and Petitioner's Traverse

("Traverse," ECF No. 7). *See generally* Docket. For the reasons set forth below, the Court **GRANTS** in part Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), **DENIES AS MOOT** Petitioner's Motion for Temporary Restraining Order (ECF No. 2), and **GRANTS** Petitioner's Motion for Order to Shorten Time to File a Traverse (ECF No. 8).[1]

## BACKGROUND

Petitioner, a Vietnam national, fled Vietnam in 1981 and obtained a green card in the United States. Pet. at 4. On June 2, 1995, following a conviction in San Diego County, Petitioner was ordered removed to Vietnam. *Id.* He was held "for about five to six months," but was then released on an order of supervision due to the government's inability to obtain travel documents. *Id.* at 4–5; Ret. at 2. Petitioner was returned to immigration custody nine times between 1997 and 2012 "due to criminal apprehensions" and "each time was released from immigration custody on an order of supervision." Ret. at 2. On November 7, 2025, Petitioner was arrested by ICE agents at the restaurant where he works and brought to the Otay Mesa Detention Center. *Id.* at 5. Petitioner alleges that the agents gave him pieces of paper in English without translation and told him to sign. *Id.* Petitioner further alleges that "no one has told [him] the reasons why [he] was arrested in a language [he] can understand, "[n]o one has given [him] a chance to fight [his] arrest," "[n]o one has told [him] what changed to make it more likely that [he] can be deported to Vietnam," and he has not "been able to talk to an ICE officer since the day [he] was arrested." *Id.* The papers Petitioner received state the reasons for his revocation as "based on a review of [his] official alien file and a determination that there are changed circumstances in [his] case." *Id.*

Respondents state that "ERO does not currently have valid travel documents to effectuate Petitioner's removal," but ERO "will be submitting a travel documentation

---

[1] Counsel for Petitioner moved the Court to allow the Traverse to be filed on December 2, 2025, when the deadline was December 1, 2025. ECF No. 8 at 1. Good cause appearing, the Court **GRANTS** Petitioner's Motion and will consider the Traverse.

request to obtain documents to effectuate Petitioner's removal to Vietnam after receiving a copy of the removal order and obtaining a translation of Petitioner's criminal history." Ret. at 2–3. Respondents argue that "ICE routinely obtains travel documents for Vietnamese citizens, including those who immigrated to the United States before 1995." *Id.* at 3. Therefore, they conclude that Petitioner will be removed in the reasonably foreseeable future, Ret. at 7, and that they do not intend to remove Petitioner to a third country, *id.* at 3.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## JURISDICTION

Respondents argue that this Court lacks jurisdiction under 8 U.S.C. § 1252(g). Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents claim that "Petitioner's claims necessarily arise from the decision or action by the Attorney General to execute removal orders." Ret. at 5 (simplified). The Court disagrees.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *7. Section 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners' objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings").

Here, Petitioner does not challenge the decision to commence removal proceedings or any act to adjudicate or execute a removal order. Rather, Petitioner is challenging "whether [the government] may detain him up to the date it does so." Traverse at 5; *Constantinovici v. Bondi*, No. 25-cv-2405-RBM-AHG, 2025 WL 2898985, at *3 (S.D. Cal. Oct. 10, 2025) ("Petitioner challenges his present detention as unlawful, as well as the Government's authority to re-detain him under the post-removal detention statute without notice and an opportunity to respond. Accordingly, this Court has jurisdiction to consider Petitioner's claims."). Therefore, § 1252(g) does not strip the Court of jurisdiction. *See, e.g.*, *Phan v. Noem*, No. 25-cv-2422-RBM-MSB, 2025 WL 2898977, at *2–3 (S.D. Cal. Oct. 10, 2025) (finding the Court had jurisdiction in a similar matter); *Sun v. Noem*, No. 25-cv-2433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025) (same); *Van Tran v. Noem*, No. 25-cv-2334-JES-MSB, 2025 WL 2770623, at *2 (S.D. Cal. Sept. 29, 2025) (same).

## DISCUSSION

When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, they must be detained for ninety days (90) pending the government's efforts to secure their removal. *See* 28 U.S.C. § 1231(a)(1). This ninety-day period is referred to as the "removal period." § 1231(a)(1)(A). After the removal

period, this statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If petitioner satisfies their initial burden, it then shifts to the Government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the alien's release may be conditioned on any of the various forms of conditioned release, including an order of supervised release. *Id.* at 700.

Once ICE releases a non-citizen on supervised release, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Nouri v. Herrera*, SA CV 25-1905-JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (internal citation omitted). ICE may re-detain a non-citizen released on an order of supervised release "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). ICE may also re-detain if the non-citizen "violates any of the conditions of release." § 241.13(i)(1). If ICE chooses to re-detain, the non-citizen must "be notified of the reasons for revocation" and be afforded "an initial informal interview promptly after his return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3). The non-citizen may "submit any evidence or information that [he] believes shows there is no significant likelihood [he may] be removed in the reasonably foreseeable future, or that [he] has not violated the order of supervision." *Id.*

Here, Petitioner was ordered removed in June of 1995. Pet. at 4. On February 15, 1996, Petitioner was released on an order of supervision because the government was unable to obtain travel documents. Ret. at 2. Petitioner was re-apprehended and released from custody nine additional times between 1997 and 2012, presumably, because his removal was not reasonably foreseeable. *Id.*; *see Zadvydas*, 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). On November 7, 2025, Petitioner was re-detained by ICE agents at the restaurant where he works. Pet. at 5. The only notice Petitioner received regarding the reasons for his re-detention was a form revocation letter in English, a language which Petitioner does not understand. *Id.*; Traverse at 7; *see also Tran v. Noem*, No. 25-cv-2391 BTM (BLM), 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release"). This notice simply states that the revocation was "based on a review of your official alien file and a determination that there are changed circumstances in your case." Pet. at 5. This plain statement is insufficient to provide notice. *See, e.g.*, *Xayakesone v. Noem*, No. 25-cv-2995-JES-BJW, 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19, 2025) (finding notice insufficient when it stated that the "decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case"); *Rokhifirooz v. Larose*, No. 25-cv-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (same).

Further, "Petitioner was not provided with an informal interview." Ret. at 2. Not only was there no interview, but if there were, due to the notice's insufficiency, Petitioner would not have been informed of the grounds for his revocation to adequately contest the revocation. *See, e.g.*, *Nouri*, 2025 U.S. Dist. LEXIS 171809, at *11 ("Petitioner cannot be expected to 'respond to the reasons for revocation stated in the notification' when the [n]otice does not actually state any reasons for revocation."); *Rasakhamdee v. Noem*, No. 25-cv-2816-RBM-DEB, 2025 WL 3102037, at *4 (S.D. Cal. Nov. 6, 2025) (finding an identically worded written notification insufficient as "ICE's conclusory explanations for

revoking [p]etitioner's release did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at the post-detention informal interview") (internal quotation marks and citations omitted).  "Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition." *Sarail A. v. Bondi*, ---- F. Supp. 3d ----, 2025 WL 2533673, at *10 (D. Minn. 2025).

"Government agencies are required to follow their own regulations." *Hoac v. Becerra*, No. 25-cv-1740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 US. 260, 268 (1954)). "[W]hen ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases).  The Court finds that, in violation of ICE's regulations, the revocation of his parole without notice or a prompt interview justifies **GRANTING** the Petition.  *See, e.g.*, *Hoac*, 2025 WL 1993771, at *4 (granting a TRO where ICE failed to follow § 241.13(i)(3) procedures); *Phakeokoth v. Noem*, No. 25-cv-2817 RBM (SBC), 2025 WL 3124341, at *6 (S.D. Cal. Nov. 7, 2025) (same); *Nouri*, 2025 U.S. Dist. LEXIS 171809, at *11 (same); *Tran*, 2025 WL 3005347, at *4 (granting a habeas petition on the same grounds); *Truong*, 2025 WL 2988357, at *6 (same); *Nguyen v. Noem*, No. 25-cv-2792 LL (VET), 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) (same).

Additionally, even if the procedural requirements were met, the Court is not persuaded that Respondents have showed a change in circumstances such that there is now a significant likelihood that Petitioner will be removed in the reasonably foreseeable future.  First, Petitioner has been subject to a final order of removal for thirty years, and in those thirty years, there has been no progress on securing his removal.  Pet at 9.  Second, Respondents have failed to secure travel documents for Petitioner.  The many times Petitioner was detained, he was released because his removal was not reasonably foreseeable, *id.*, and Respondents present no evidence that this has changed.  Respondents

1  attempt to argue that the changed circumstances are that "[i]n fiscal year 2025, ICE
2  removed at least 587 Vietnamese citizens to Vietnam" with 324 of them being Vietnamese
3  citizens who immigrated to the United States before July 12, 1995. Ret. at 3. Respondents
4  conclude that because ICE has removed other Vietnamese citizens that this marks a change
5  in circumstances justifying Petitioner's re-detention. *Id.* at 12. However, courts in this
6  Circuit have routinely rejected this argument, concluding that because "the court has no
7  evidence regarding the percentage of successful requests to Vietnam" the fact that others
8  have been removed to Vietnam alone cannot constitute changed circumstances in an
9  individual petitioner's case. *See, e.g.*, *Hoac*, 2025 WL 1993771, at *4 (rejecting the
10 government's argument that ICE's intent to apply for travel documents constituted changed
11 circumstances because they failed to provide "any details about why a travel document
12 could not be obtained in the past, nor have they attempted to show why obtaining a travel
13 document is more likely this time around"); *Phan*, 2025 WL 2898977, at *4 (rejecting the
14 same argument about Vietnamese removal); *Phan v. Warden of Otay Mesa Detention
15 Facility*, No. 25-cv-2369 AJB (BLM), 2025 WL 3141205, at *5 (S.D. Cal. Nov. 10, 2025)
16 (finding no significant likelihood of removal in the reasonably foreseeable future based on
17 the respondents' reliance on the removal of other individuals to Vietnam); *Phouvieng K. v.
18 Andrews*, No. 25-cv-1512-KES-SAB (HC), 2025 WL 3265504 at 6–7 (S.D. Cal. Nov. 24,
19 2025) (rejecting respondents' argument that "ICE has successfully removed aliens with
20 final orders of removal to Laos").

21       Therefore, because Respondents have failed to follow their own regulations in re-
22 detaining Petitioner and have failed to demonstrate that his removal is reasonably
23 foreseeable, the Court **GRANTS** the Petition.

## CONCLUSION

25       Based on the foregoing, the Court **GRANTS** in part Petitioner's Petition for Writ of
26 Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner
27 from custody subject to the conditions of his preexisting Order of Supervision. The Court
28 **ORDERS** that Respondents cannot re-detain Petitioner without following the procedures

1  set out in 8 C.F.R. § 241.13(i) and other implementing regulations. The Parties are
2  **ORDERED** to file a Joint Status Report by December 8, 2025, confirming that Petitioner
3  has been released. The Court **DENIES AS MOOT** Petitioner's Motion for a Temporary
4  Restraining Order (ECF No. 3). The Clerk of Court **SHALL CLOSE** the case.
5      **IT IS SO ORDERED.**
6  Dated: December 3, 2025

*[signature]*
Hon. Janis L. Sammartino
United States District Judge